UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DARRYL COLLINS,                                        :

                   Plaintiff,                         :                 OPINION AND ORDER

                -v.-                                 :                 12 Civ. 2194 (GWG)

                                :

COMMISSIONER OF SOCIAL SECURITY,        :

                                :

                  Defendant.
-----------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Darryl Collins, proceeding pro se, brings this action pursuant to 42 U.S.C.

§ 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security

denying his claim for disability insurance benefits under the Social Security Act.  The

Commissioner has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure, which Collins opposes.[1]  The parties consented to having this matter

decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  For the reasons

stated below, the Commissioner's motion is granted.

I.      BACKGROUND

      A.     Administrative Proceedings and Procedural History

       Collins applied for social security insurance benefits on December 15, 2008, see

Administrative Record, filed Nov. 27, 2012 (Docket # 13) ("R."), 53, alleging that he became

---

      [1]  See Notice of Motion, filed Jan. 23, 2013 (Docket # 16); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed Jan. 23, 2013 (Docket # 17); Affirmation in Opposition to Motion Motion [sic] for Judgment, filed Mar. 22, 2013 (Docket # 23) ("Opp."); Defendant's Memorandum in Reply to Plaintiff's Opposition to the Commissioner's Motion for Judgment on the Pleadings, filed Apr. 5, 2013 (Docket # 24).

disabled on June 3, 2008, R. 135.  Collins was insured through December 31, 2012.  R. 10, 135.

Collins's application was denied on May 6, 2009.  R. 54–57.  After requesting a review of the denial, R. 60, Collins appeared pro se before an Administrative Law Judge ("ALJ") on August 25, 2010, R. 20–52.  On September 9, 2010, the ALJ upheld the denial of the application, finding that Collins was not disabled from the alleged onset date through the date of his decision. R. 8–16.  The decision became final on January 27, 2012 when the Appeals Council denied Collins's request for review.  R. 1–4.  On March 23, 2012, Collins filed this lawsuit pro se seeking review of the ALJ's decision.  See Complaint, filed Mar. 23, 2012 (Docket # 2).

      B.      The Administrative Record Before the ALJ

          1.      Background

Collins was born on September 14, 1960.  R. 30.  He completed high school and one and a half years of college.  R. 31, 144.  From 1984 to 2007, he worked as a service manager at a car dealership.  R. 140.  In this position, he greeted customers, oversaw mechanics working on cars, and ensured that safety regulations were observed.  Id.  In a form completed as part of his application for benefits, Collins represented that this position required him to sit six hours per day, to stand and walk for one hour each per day, and to lift less than 10 pounds.  R. 161.  He testified that his position was eliminated when the dealership closed down in 2007.  R. 49–50. Starting in 2008, he worked part-time as a temporary employee.  R. 34–35, 38, 189.  He claimed to be disabled due to "calcified hips, [a] pinched nerve in [the] lower back, [and] alcoholism," and alleged that he was in constant pain which prevented him from sitting, standing, walking, bending, or lifting for any length of time.  R. 139.  While the pain began prior to 2008, it became so intense by June 3, 2008, that he purportedly could no longer work a full-time job.  R. 38.

2

2.      Treatment Records Prior to June 3, 2008

On May 11, 2006, Collins arrived at Mercy Medical Center ("Mercy") with complaints

of abdominal pain, nausea, and vomiting.  R. 223–24.  A CT scan and an ultrasound revealed

diverticulitis,[2] a calcified or "porcelain" gallbladder, and a mass on the right lobe in the

interior-most aspect of the liver.  R. 224, 227–29.  Collins was admitted as a patient.  R. 224.  On

May 19, 2006, he underwent a diagnostic laproscopic surgery, a cholecystectomy,[3] and a ventral

hernia repair.  R. 220–21.  Collins was found to have a large hemangioma[4] on the right lobe of

his liver.  R. 220.

On September 3, 2007, New York Presbyterian Hospital admitted Collins with

complaints of lower abdominal pain.  R. 233, 235.  He reported that the pain started in his lower

back and traveled to his lower abdomen.  R. 235.  The pain worsened with movement, but was

relieved slightly when he lay down.  Id.  An MRI showed that Collins had hemangiomas and

possibly mild pancreatitis.  R. 237.  A CT scan revealed hepatomegaly[5] with multiple non-

enhancing lesions.  R. 240.  Hospital records suggested that Collins's abdominal pain was the

result of alcoholic gastritis rather than liver disease.  R. 243.  He had a history of alcohol abuse

and had been recently released from an inpatient detoxification program.  R. 235.  The hospital

records also noted that Collins had worked as a service representative for Chrysler for 28 years,

---

[2]  Diverticulitis is inflamation of the "pouch or sac opening from a tubular or saccular organ, such as the gut or bladder."  Stedman's Medical Dictionary 532 (27th ed. 2000) ("Stedman's").

[3]  Cholecystectomy is the "[s]urgical removal of the gallbladder."  Stedman's at 337.

[4]  A hemangioma is an "anomaly, in which proliferation of blood vessels leads to a mass that resembles a neoplasm."  Stedman's at 795.

[5]  Hepatomegaly is an enlargement of the liver.  Stedman's at 810.

but had lost his job three months earlier due to alcohol dependence.  R. 236.  At the time of his admittance, he was working as a temporary employee.  Id.  Collins was discharged on September 5, 2007.  R. 242.

On September 25, 2007, x-rays of Collins's lumbar spine were taken after he reportedly fell down stairs and complained of back pain.  R. 239.  The x-rays showed "[e]arly productive changes," but "[n]o definite acute fracture[s]."  Id.  Collins had straightening of his lordotic curve, mild narrowing of the L4-L5 disc space with productive changes, mild productive changes in his facet joints, and grade 1 spondylolisthesis[6] at L5-S1.  Id.

Collins returned to New York Presbyterian on April 26, 2008 complaining of right lower chest and right upper quadrant abdominal pain.  R. 238.  Records noted that Collins had chronic alcohol dependence.  Id.  A lateral chest x-ray revealed no abnormalities, id., and an EKG showed no significant changes since a previous test performed on September 3, 2007, R. 241.

### 3.    Treatment Records After June 3, 2008

On July 1, 2008, Collins was treated at the emergency room of St. Luke's Cornwall Hospital ("St. Luke's") for a hip injury and pain.  R. 287.  Collins complained of chronic bilateral hip pain, which had bothered him for the past month and was worse in his left hip.  Id. He had no injury, weakness, numbness, or paresthesias, but had a history of arthritis.  Id.  He had not taken medication for pain and had a full range of motion in his hips.  R. 287–88.  Dr. Jessica Kirstein's clinical impression was that Collins had chronic arthritic hip pain.  R. 287.  She prescribed Naproxen and Vicodin.  Id.

Collins appeared at the Greater Hudson Valley Family Health Center ("GHVFHC") on

---

[6]  Spondylolisthesis is the "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum."  Stedman's at 1678.

July 3, 2008 complaining of hip pain that shot down his legs.  R. 255.  On physical examination,

Collins's lungs and cardiovascular system were within normal limits.  Id.  He was diagnosed

with sciatica,[7] was prescribed Ultracet and Flexeril, and was instructed to return following an

MRI.  Id.  On July 22, 2008, Collins returned to GHVFHC with complaints of a burning

sensation in his penis.  R. 254.  He was diagnosed with a urinary tract infection and prescribed

medication.  Id.  He returned to GHVFHC again on August 12, 2008 for a follow up

appointment, during which he had no symptoms of a urinary tract infection.  R. 251.  An open

MRI of Collins's lumbar spine was ordered.  Id.

On December 11, 2008, Collins appeared at St. Luke's emergency room complaining of

sharp pain on the left side of his chest for the previous four days.  R. 275, 279.  He rated the pain

as an eight out of 10 and claimed that the pain was unaffected by activities.  R. 275.  He denied

fatigue, chills, vomiting, weight loss, or other symptoms.  R. 279.  An examination generated

normal results.  R. 284.  Collins was admitted for observation to rule out acute coronary artery

syndrome.  R. 275.  Dr. Christian Castro-Nunez examined Collins.  R. 279–82.  He noted that

Collins complained of suffering 10 to 15 episodes of chest pain a day, each lasting for

approximately one minute and accompanied by excessive sweating.  R. 279.  Collins's chest pain

improved after taking sublingual nitroglycerine.  Id.  He informed Dr. Castro-Nunez of his

history of chronic low back pain, chronic hip pain, heavy smoking, and substance abuse

including the use of cocaine.  Id.  Dr. Castro-Nunez reported normal examination results,

including unremarkable cardiovascular and lung examinations.  R. 280.  His impression was

---

[7]  Sciatica is "[p]ain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction . . . , but now known to usually be due to herniated lumbar disk compromising a nerve root, most commonly the L5 or S1 root." Stedman's at 1602.

atypical chest pain, heavy smoking, cocaine use, obesity, and chronic hip pain.  R. 281.

Dr. William Lee also examined Collins on December 11, 2008.  R. 277–78.  Dr. Lee found that Collins's blood pressure and heart rate were in normal ranges.  R. 277.  His impression was that Collins had atypical chest pain and a history of tobacco use.  R. 278.  An exercise stress test showed normal left ventricular systolic function and no evidence of angina or ischemia.[8]  R. 290.  An EKG revealed normal chamber sizes, normal left ventricular systolic function, and mild mitral and tricuspid valve regurgitation.  R. 291.  A chest x-ray showed that Collins's heart was slightly enlarged, but revealed no evidence of active pulmonary heart disease.  R. 292.  When Collins was discharged on December 12, 2008, he was instructed to consume a diet low in fat and sodium and to resume normal activities as tolerated.  R. 276.

On January 15, 2009, GHVFHC treated Collins for complaints of hip pain.  R. 250.  An MRI showed no evidence of a disc herniation, but did reveal neural foraminal narrowing.  Id.  Collins had a decreased range of motion in his hips and was diagnosed with degenerative joint disease in the hips, lumbar spine radiculopathy, and arthritic changes.  Id.  He was prescribed Nabumetone and Gabopentin, x-rays were ordered, and he was referred for physical therapy.  Id.  On January 17, 2009, x-rays of Collins's hips showed normal results.  R. 289.

On March 11, 2010, Collins went to St. Luke's with symptoms of asthma.  R. 332.  Dr. Daviesh Doshi diagnosed adult asthma.  Id.  He prescribed a Proventil inhaler, recommended that Collins take one day off work, and instructed Collins to follow up in two to three days.  Id.  Collins returned to St. Luke's on April 19, 2010 with asthma symptoms.  R. 334–35.  Dr. Jean-Paul Menoscal prescribed Albuterol MDI and Prednisone and instructed Collins to quit smoking.

---

[8]  Ischemia is "[l]ocal anemia due to mechanical obstruction (mainly arterial narrowing or disruption) of the blood supply."  Stedman's at 924.

R. 334.

On May 6, 2010, Collins arrived at St. Luke's with complaints of chest pain and swelling
of the legs and ankles.[9]  R. 88.  Collins was advised to quit smoking.  Id.  On May 25, 2010,
Collins returned to St. Luke's again with symptoms of asthma.  R. 90.  Dr. Kenneth M. Berry
diagnosed asthma and prescribed Prednisone.  Id.

> 3.    Dr. Marilee Mescon, M.D.

At the request of the Commissioner, Dr. Marilee Mescon, M.D., a consultative examiner
from Industrial Medicine Associates, P.C., conducted a medical examination of Collins on
March 4, 2009.  See R. 294–97.  Collins claimed to be disabled due to back pain, hip pain, and
high blood pressure.  R. 294.  The back pain allegedly began in 2005, but had worsened over the
previous year.  Id.  He stated that he could do laundry, shop, shower, bathe, and dress himself.
R. 295.  He required neither a back brace nor an assistive device for ambulation.  R. 294–95.
Collins's gait was normal but he claimed to be unable to walk heel-to-toe or to squat.  R. 295.
During the examination, he required no assistance in changing clothes, getting on and off the
examination table, or rising from a seated to a standing position.  Id.  Dr. Mescon reported that
Collins had a full range of motion in the cervical spine and had full rotary movement bilaterally.
R. 296.  In the lumbar spine, Collins had 20 degrees of flexion and extension, five degrees of
lateral flexion bilaterally, and was negative in straight leg testing bilaterally.  Id.  Collins could
elevate and abduct both shoulders forward 90 degrees, but claimed to be unable to perform
adduction or internal rotation.  Id.  His joints were stable and nontender.  Id.  He had full strength
in the upper and lower extremities and had a full range of motion in the elbows, forearms, and

---

[9] Collins submitted medical records from the May 6, 2010 visit to support his claim that
he missed a scheduled hearing before the ALJ due to illness.  See R. 86–87.

wrists.  Id.  His hand and finger dexterity were intact.  R. 297.  He claimed to be able to open and close buttons and zippers without difficulty.  Id.  His reflexes were normal and Dr. Mescon noted no motor or sensory deficit.  R. 296.  X-rays of Collins's hips and pelvis were normal.  R. 297.

Dr. Mescon diagnosed back and hip pain with suboptimal examination, high blood pressure, and a history of alcohol and cocaine abuse.  Id.  Her prognosis was fair, and in her opinion "there [were] no objective findings to support the fact that the claimant would be mildly restricted in his ability to sit."  Id.  She opined, however, that Collins's "capacity to stand, climb, push, pull, or carry heavy objects would be moderately restricted by his back and hip pain."  Id.

### 3.    Dr. Annette Payne, Ph.D. and Dr. M. Morog

On March 4, 2009, Dr. Annette Payne, Ph.D., a consultative psychologist, conducted a psychiatric evaluation of Collins.  See R. 298–302.  Collins informed Dr. Payne that he drove himself to the examination and that he worked part time as a driver for Labor Ready.  R. 298.  He claimed to be in constant pain and reported difficulty sleeping.  Id.  Dr. Payne noted that Collins had symptoms of mild depression related to his pain, as well as dysphoric moods, hopelessness, loss of interest, low energy, and social withdrawal.  R. 298–99.  Collins stated that he had a history of alcohol and drug abuse.  R. 299.  In a mental status examination, Dr. Payne reported unremarkable results, except she noted that Collins's affect and mood were anxious and depressed, his attention and concentration were impaired, and his recent and remote memory functioning were mildly impaired.  R. 299–300.  Collins reported being capable of caring for himself.  R. 300.  In Dr. Payne's opinion, Collins could follow and understand simple instructions and perform simple tasks.  R. 301.  She concluded that he had difficulties concentrating, performing complex tasks, making appropriate decisions, relating with others, and dealing with stress.  Id.  She diagnosed chronic pain disorder associated with his psychological

8

and general medical condition, cocaine and alcohol dependence, calcified hips, and a pinched nerve in the lower back.  Id.  She recommended counseling, psychotropic medications, and vocational rehabilitation.  Id.

On April 29, 2009, Dr. M. Morog, a state agency psychologist, reviewed Collins's records and assessed that he had an affective disorder and a substance abuse disorder.  R. 305. In Dr. Morog's opinion, Collins's mental impairments were not severe.  Id.

### 4.   The August 25, 2010 Hearing

On August 25, 2010, Collins appeared pro se before an ALJ.  R. 20–52.  He testified that he was 49 years old and that he lived in Newburgh, New York.  R. 30–31.  He was 5' 11" tall, weighed 192 pounds, and was right-handed.  Id.  He had attended City College for a year and a half.  R. 31.

To get to the hearing, Collins took a bus to a train and then a cab from the train station. R. 31–32.  He previously had a driver's license, but it was suspended following an arrest for driving while intoxicated.  Id.  Prior to 2007, he worked as a service manager at a Chrysler dealership.  R. 37.  After he lost his job in 2007, he was unemployed for six months.  Id.  At the time of the hearing, he was working part-time as a temporary employee packing and unpacking boxes containing empty bags.  R. 34–36.  The length of his work day as a temporary employee varied.  R. 35.

He claimed that, as of June 3, 2008, he was no longer capable of working a full work week due to pain.  R. 33–34.  He alleged that the pain started prior to that date, but became worse in 2008.  See R. 38.  His pain was "so extreme" that some days he was barely able to walk, which prevented him from going to work on a daily basis.  R. 38–39.  He stated that there were at least five to seven days a month in which the pain was "unbearable."  R. 44.  In

particular, Collins complained of hip pain in both hips and back pain that originated in the lower

back and shot "down [his] right leg to [his] right toe," causing him to lose his balance.  R. 39.

He also claimed to have difficulty lifting things due to arthritis in both shoulders.  R. 40.  He had

previously undergone physical therapy for hip and back pain at St. Luke's, and was prescribed a

cane by a therapist to assist him while walking.  R. 41–42, 46.  However, at the time of the

hearing, he was not attending physical therapy because the therapists had advised him that they

could do nothing for his condition.  R. 41.  Finally, Collins stated that he had asthma, but that

doctors refused to treat him for it until he quit smoking.  R. 40–41.  He indicated that his inhaler

relieved his asthma symptoms.  R. 41.

Collins testified that he could comfortably sit for an hour, R. 44, that he could stand for

an hour or two, R. 45, that he could walk three or four blocks, and that he could climb a flight of

stairs with the assistance of a cane, R. 46.  He stated that he could lift up to 10 pounds, R. 47,

and that he could pick things up with his hands, but that he dropped items occasionally due to

arthritis in the thumbs, R. 47–48.  He acknowledged that his thinking, concentration, and

memory were all intact.  R. 48.

C.      The ALJ's Decision

On September 9, 2010, the ALJ issued a decision finding Collins not entitled to disability

insurance benefits.  See R. 8–16.  The ALJ's findings of fact and conclusions of law are as

follows:

> 1.  The claimant meets the insured status requirements of the Social Security Act
> through December 31, 2012. . . .
>
> 2.  The claimant has not engaged in substantial gainful activity since June 3,
> 2008 . . . .
>
> 3.  The claimant has the following severe impairments: degenerative joint disease

(DJD) of the lumbar spine; hip pain; hepatomegaly; asthma; obesity; and a history of substance abuse . . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). . . .

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the [sic] less than the full range of light work as defined in 20 CFR 404.1567(b). . . . [10]

6.  The claimant is capable of performing past relevant work as a Service Manager.  This work does not require the performance of work-related activities precluded by the claimant's functional residual capacity . . . .

7.  The claimant has not been under a disability, as defined in the Social Security Act, from June 3, 2008, through the date of this decision (20 CFR 404.1520(f)).

R. 10–16.  The ALJ found that Collins's depression was non-severe because it did "not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." R. 11.  With regard to the fourth finding, the ALJ determined that Collins's condition did not meet the listing criteria for a musculoskeletal disorder of the spine, as he was "neurologically intact" and there was "no evidence of atrophy, muscle weakness, [or] sensory or reflex loss in the lower extremities."  R. 12.  As to the fifth finding, the ALJ concluded that Collins could perform light work, but that he should change positions every two hours and should avoid respiratory irritants due to asthma.  R. 14.  The ALJ found Collins's statements concerning the intensity, persistence, and limiting effect of his pain not credible.  R. 13–14.  Most significantly, the ALJ found that Collins's ability to work part-time was inconsistent with his alleged limited functional capacity.  R. 13.  The ALJ also remarked that there were minimal objective findings concerning back and hip pain.  Id.  The ALJ credited Dr. Mescon's opinion that Collins had no

---

[10]  As is explained in the ALJ's decision, the ALJ found "that the claimaint has the residual functional capacity to perform . . . light work."  R. 14.

limitations in his ability to sit.  R. 14.  Finally, with regard to the sixth finding, the ALJ

concluded that Collins's former position as a service manager was sedentary work based off a

description of the job that Collins provided in his application for benefits.  R. 15.  Because

Collins could perform light work, he could perform his past relevant work, and therefore, he was

not disabled.  Id.  Alternatively, based on Medical-Vocational guidelines, the ALJ ruled that

there were other jobs in the national economy which Collins could perform.  R. 15–16.

       D.      Treatment Records Submitted to the Appeals Council

      Collins submitted to the Appeals Council additional medical documentation post-dating

the ALJ's decision.  R. 336–42.  On June 10, 2011, Dr. Russell Perry from Fulton Family

Medical Center of Bronx Lebanon Hospital Center ("Bronx Lebanon") completed a Treating

Physician's Wellness Plan Report.  See R. 339.  He diagnosed bilateral hip arthritis based on

December 2010 x-rays of Collins's lumbrosacral spine and hip, and the Spurling maneuver.  R.

340.  He prescribed Percocet, an injection, and six months of physical therapy.  R. 339–40.  Dr.

Perry declined to check the box on the form that said Collins was "[u]nable to work for at least

12 months."  R. 339.  Instead, he checked the box indicating that Collins was "[t]emporarily

unemployable."  Id.  This box directed Dr. Perry to state the "timeframe" in which he expected

Collins to participate in "work-related activities."  Id.  Dr. Perry stated only that Collins would

be receiving an injection six days later.  Id.  Dr. Perry completed a document labeled "outpatient

medication reconciliation" on August 26, 2011.  R. 336.  He recommended that Collins continue

taking his medications.  Id.  On the same date, he completed another Wellness Plan Report in

which he diagnosed bilateral hip arthritis and lumbar radiculopathy.  R. 341–42.  He referred

Collins to a rheumatologist to rule out rheumatoid arthritis.  R. 341.  Dr. Perry opined that

Collins was temporarily unemployable for three to six months.  R. 342.

A family medicine specialist also completed a Physician's Wellness Plan Report on November 18, 2011.  R. 337–38.  The specialist diagnosed bilateral hip arthritis, lumbar radiculopathy, hypertension, and liver hemangioma.  R. 337.  The specialist checked a box on the form indicating that Collins was "temporarily unemployable," thus eschewing a box that would have indicated Collins was unable to work for at least 12 months.  R. 338.  The specialist failed to fill out the section seeking "relevant clinical findings."  R. 337.

E.       Evidence Submitted In Response to the Commissioner's Motion

In opposition to the Commissioner's motion for judgment on the pleadings, Collins submitted additional medical records.  See Documents annexed to Opp. ("Supp.").  The records show that Collins was treated by Bronx Lebanon from December 2010 to May 2012 for complaints of hip and knee pain.  See Supp. 33–59.  X-rays revealed no acute fracture or dislocation in Collins's hips, but did show degenerative changes in his hips and lumbar spine. Supp. 57.  Collins was referred for steroid injections in the hips and knees and prescribed Cymbalta.  Supp. 54, 57.

Collins also underwent physical therapy at Catskill Physical Medicine & Pain Management from May 18 to August 29, 2012.  Supp. 10–32.  Collins ambulated with a cane and had symptoms of bilateral hip and knee arthritis.  Supp. 8, 10.  The physical therapy was designed to improve his pain and his ability to walk.  Supp. 11.  He was not a candidate for surgery.  Id.  Collins tolerated the physical therapy well and had no adverse side effects.  Supp. 13–32.

Finally, Collins submitted a Physician's Report on Disability due to Physical Impairment completed by Dr. Perry on December 14, 2012.  Supp. 1–7.  Dr. Perry diagnosed osteoarthritis of the hips and knees bilaterally.  Supp. 1.  He also noted that Collins had degenerative joint disease

13

and a limited range of motion in his hips and knees.  Supp. 2.  In Dr. Perry's view, Collins had to

lie down three hours per day and required a cane or walker to walk.  Supp. 2–3.  In an eight hour

day, Collins could sit for less than one hour, stand for one hour, and walk for less than one hour.

Supp. 4.  He could only lift or carry up to five pounds of weight occasionally and could never

bend, squat, crawl, or climb.  Supp. 4–5.  Dr. Perry noted that Collins had difficulty traveling

because he could not walk up stairs.  Supp. 6.

II.     SCOPE OF JUDICIAL REVIEW UNDER 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(citation and internal quotation marks omitted); accord Burgess v. Astrue, 537 F.3d 117, 127–28

(2d Cir. 2008); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402

U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938));

accord Burgess, 537 F.3d at 127–28; Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006);

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on

particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citation

and internal quotation marks omitted).  Thus, "[i]f the reviewing court finds substantial evidence

to support the Commissioner's final decision, that decision must be upheld, even if substantial

14

evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).  The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (citation omitted).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citation and some internal quotation marks omitted).  "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted).

III.   STANDARD GOVERNING EVALUATIONS OF DISABILITY CLAIMS BY THE AGENCY

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's

educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. § 404.1520(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ," id. § 404.1520(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience.  Id. § 404.1520(a)(4)(iii).  Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's residual functional capacity ("RFC") to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work."  Id. § 404.1520(a)(4)(iv).  If the claimant is able to do such work, he or she is not disabled.  Id.  Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's residual functional capacity permits the claimant to do other work.  Id. § 404.1520(a)(4)(v).  If the claimant cannot perform other work, he or she will be deemed disabled.  Id.  The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform.  See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

IV.     DISCUSSION

Collins's opposition papers state only that the Commissioner's motion should be denied because he "was in pain and was able to work part time due to [his] condition."  See Opp. at 1. He also attaches — without argument or explanation — medical records post-dating the ALJ's decision.  Because "it is well settled that pro se litigants are entitled to a liberal construction of their papers, which should be read 'to raise the strongest arguments that they suggest,'" Rodriguez v. Barnhart, 2002 WL 31875406, at *3 (S.D.N.Y. Dec. 24, 2002) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)), we will assume that Collins raises the following issues: (1) whether the ALJ's decision was supported by substantial evidence; and (2) whether the case should be remanded to consider the new evidence submitted as part of his opposition papers.

     A.     Substantial Evidence Supporting the ALJ's Decision

The ALJ first determined that Collins's depression was not a severe impairment, finding that he had no more than "mild" limitations in the "paragraph B" criteria found in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00C.  R. 11–12.[11]  The ALJ noted that Collins did not allege a psychiatric impairment and had no history of mental health treatment other than rehabilitation for substance abuse.  R. 11.  The ALJ's determination was supported by Dr. Payne's assessment, which stated that Collins had no history of psychiatric treatment and that he was capable of his own self-care.  R. 298, 300.  Dr. Payne stated that Collins could perform daily activities, such as laundry, cooking, and shopping, and that he had good relationships with family members.  R. 300.  Furthermore, Dr. Morog opined that Collins's mental impairments were not severe.  R.

_____

     [11]  The paragraph B criteria consider the following: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.  R. 11.

305.  Collins also testified that his thinking, concentration, and memory were all intact.  R. 48.

Thus, substantial evidence supported the determination that Collins's depression was not a

severe impairment.

The ALJ also found that Collins's impairments or combination of impairments did not

meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 12.  With

respect to the listing criteria for musculoskeletal disorder of the spine, see 20 C.F.R. pt. 404,

subpt. P, app. 1, § 1.04, the ALJ concluded that Collins was "neurologically intact" and there

was "no evidence of atrophy, muscle weakness, [or] sensory or reflex loss in the lower

extremities."  R. 12.  Dr. Mescon's examination — in which she concluded that Collins's

reflexes were intact, that he had no sensory or motor deficits, and that he had full strength in the

upper and lower extremities — supports this finding.  R. 296.

Next, "[a]fter careful consideration of the entire record," the ALJ determined that Collins

had a RFC to engage in light work, but that he should change positions every two hours and

should avoid respiratory irritants due to a history of asthma.  R. 12–14.  The ALJ found that

Collins's complaints of persistent pain were inconsistent with the objective evidence.  R. 13.

Although x-rays from 2007 showed mild degenerative changes in his lumbar spine, R. 239, there

was no evidence of follow-up treatment, R. 13.  Nor was there evidence of disc herniation, even

though an MRI from January 2009 showed disc degeneration and neuroforaminal narrowing.  R.

13, 250.  While Collins claimed that his cane was prescribed by a physical therapist, R. 46, he

provided no records of attending physical therapy to the ALJ, R. 13.  Most importantly, Collins

had been working as temporary employee, R. 34–35, 236, and there was no objective evidence

supporting the apparently self-imposed restriction that he could not work every day, R. 13.

Indeed, Collins's ability to take public transportation by himself, see R. 31–32, was inconsistent

with his claims of severe pain and an inability to function, R. 14.  The ALJ credited Dr. Mescon's opinion that Collins had no restrictions in his ability to sit and that he had a full range of motion in the wrist, forearms, and ankles.  R. 13–14, 296–97.  With respect to Collins's asthma, Collins testified that it was controlled by self-administered medication and that doctors refused to treat him further for the condition until he quit smoking.  R. 13, 41.

The Second Circuit has held that where an ALJ rejects witness testimony as not credible, the basis for the finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983)); accord Snell v. Apfel, 177 F.3d 128, 135 (2d Cir. 1999).  The ALJ must make this determination "in light of the medical findings and other evidence regarding the true extent of the pain alleged by the claimant."  Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984) (citation and internal quotation marks omitted).  Here, as just described, the ALJ carefully analyzed the evidence in support of his credibility determination.  Thus, in light of this analysis, we find that substantial evidence supported the ALJ's RFC assessment.

Finally, the ALJ concluded that Collins could perform his past relevant work as a service manager in a car dealership.  R. 14–15.  In his application for benefits, Collins represented that the service manager position required him to sit six hours a day, stand and walk for one hour a day each, and to lift no more than 10 pounds, R. 15, 161, which is equivalent to sedentary work, see 20 C.F.R. § 404.1567(a).  In addition, the ALJ cited the Dictionary of Occupational Titles, which classified the position of "Automobile-Repair-Service Estimator (automobile services)" as light work.  R. 15.

The ALJ found in the alternative that if Collins was unable to perform his past relevant

work, he was capable of performing other work given his RFC, age, and education.  R. 15–16.

Because Collins was under the age of 50 at the time of application, see R. 53, he was considered

a "younger individual" as defined by 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h)(1),

see R. 15.  Collins had at least a high school education and could communicate in English.

See R. 30–31.  To the extent Collins had to alternate positions every two hours and had to avoid

respiratory irritants, these limitations did not significantly reduce his occupational base to

perform light work.  R. 15–16; see also SSR 83-14, 1983 WL 31254, at *4 (Jan. 1, 1983).  The

ALJ applied Medical-Vocational Rule 202.21, which directs a finding of "not disabled" for

younger individuals capable of performing light skilled work that have at least a high school

education and can speak English.  See 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.21.

 Because Collins's own statements concerning his past work as a service manager

corresponded to sedentary work, R. 161, the ALJ's conclusion that he could perform his past

relevant work was supported by substantial evidence.  Nor is there any error in the ALJ's

alternative analysis that Collins was capable of performing other work in the national economy.

Accordingly, the determination that Collins was not disabled was supported by substantial

evidence.

 B. Remand for Consideration of New Evidence

  1. Governing Law

 Whether new evidence of disability can be considered depends upon which forum the

claimant first presented it.  Generally, "evidence not contained in the administrative record may

not be considered [by a district court] when reviewing the findings of the Commissioner."

Brown v. Barnhart, 2003 WL 1888727, at *10 (S.D.N.Y. Apr. 15, 2003) (citations omitted),

aff'd, 85 F. App'x 249 (2d Cir. 2004).  The Court may, however, order that additional evidence

be considered by the Commissioner, "but only upon a showing that there is new evidence which

is material and that there is good cause for the failure to incorporate such evidence into the

record in a prior proceeding." 42 U.S.C. § 405(g).  The Second Circuit has summarized this

three part showing as follows:

> [A]n appellant must show that the proffered evidence is (1) "new" and not merely
> cumulative of what is already in the record, and that it is (2) material, that is, both
> relevant to the claimant's condition during the time period for which benefits
> were denied and probative.  The concept of materiality requires, in addition, a
> reasonable possibility that the new evidence would have influenced the
> [Commissioner] to decide a claimant's application differently.  Finally, claimant
> must show (3) good cause for her failure to present the evidence earlier.

Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (first alteration in

original) (internal citations and punctuation omitted).

## 2.      Evidence Presented to the Appeals Council and to this Court

Collins attaches to his opposition papers three categories of documents not in the

administrative record: (1) medical records from Bronx-Lebanon; (2) physical therapy records

from Catskill Physical Medicine & Pain Management; and (3) a physician's report on disability

completed by Dr. Perry on December 14, 2012.  See Supp.

Because all of this evidence was created after the ALJ's decision, there seems to be little

question that it is "new" and that "good cause" exists for Collins failing to submit it to the ALJ.

See Pollard v. Halter, 377 F.3d 183, 193 (2d Cir. 2004); Stober v. Astrue, 2010 WL 7864971, at

*16 (D. Conn. July 2, 2010).  However, the evidence fails to satisfy the materiality requirement

for remand based on new evidence.  "To satisfy the materiality standard, additional evidence

must . . . relate back to the time period for which benefits were denied, that is, before the ALJ's

decision."  Brown, 2003 WL 1888727, at *11 (citation and internal quotation marks omitted).

The relevant time period here is between June 3, 2008 and September 9, 2010 — that is, between

the date of the alleged onset of disability and the date of the ALJ's decision.  See Fortier v. Astrue, 2010 WL 1506549, at *21–22 (S.D.N.Y. Apr. 13, 2010).  While documents generated after the ALJ's decision may bear upon the "'severity and continuity of impairments existing'" during the relevant period, Pollard, 377 F.3d at 194 (quoting Lisa, 940 F.2d at 44), "if the new evidence concerns only the claimant's condition after the relevant time period, a remand for consideration of this evidence is not appropriate," Stober, 2010 WL 7864971, at *15 (citing Johnson, 563 F. Supp. 2d at 461).

All of the records post-date the ALJ's decision.  None of the medical professionals appear to have treated Collins during the relevant time period and none offer a retrospective opinion of his condition.  Rather than shedding light on Collins's condition during the relevant time period, the new evidence suggests at most that his condition worsened after the ALJ's decision.  For example, Dr. Perry's December 14, 2012 report stated that Collins could sit continuously for only five minutes and could sit for less than an hour over an eight hour work day.  Supp. 4.  During the August 25, 2010 hearing, even Collins conceded that he could sit in one place for an hour.  R. 44.  Collins also stated that he could lift objects weighing up to 10 pounds, R. 47, but Dr. Perry's report states that he could lift only five pounds occasionally, Supp. 4.  Similarly, while Collins was working part-time as a temporary employee prior to the ALJ's decision, R. 34–35, the Bronx-Lebanon records reflect that he ceased working sometime after the ALJ's decision, Supp. 35 (noting that Collins was not working).  Collins offers no explanation how these new records bear on his condition prior to the ALJ's decision.

Because there is no reason to believe the new evidence casts light on Collins's condition during the period under review, remand to consider this evidence is inappropriate.  See Stober, 2010 WL 7864971, at *17 ("records relate[d] only to [claimant's] condition after the ALJ's

decision" not probative or material); <u>Brown v. Comm'r of Soc. Sec.</u>, 709 F. Supp. 2d 248, 258

(S.D.N.Y. 2010) (remand inappropriate where there was no evidence or even allegation that new

records related to relevant period); <u>Johnson</u>, 563 F. Supp. 2d at 461 (same).[12]

V.      CONCLUSION

The Commissioner's motion for judgment on the pleadings (Docket # 16) is granted.

The Clerk is requested to enter judgment and to close this case.

Dated: August 15, 2013
      New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy mailed to:

Darryl Collins
351 W. 42nd Street, #915
New York, NY 10036


Counsel by ECF

---

[12] We note that in reaching the conclusion that the ALJ's decision was supported by substantial evidence, we have considered the materials presented to the Appeals Council on the assumption that it was "new and material." <u>See</u> 20 C.F.R. § 404.970(b) (requiring Appeals Council to consider evidence presented on appeal that is "new and material"); <u>Sobolewski v. Apfel</u>, 985 F. Supp. 300, 311 (E.D.N.Y. 1997); <u>see also</u> <u>Perez v. Chater</u>, 77 F.3d 41, 45 (2d Cir. 1996) ("[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."). Where, as here, the Appeals Council denies review after considering new evidence, this Court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." <u>Perez</u>, 77 F.3d at 46. In this case, Collins submitted two reports from Dr. Perry and one report from a family medicine specialist to the Appeals Council. Cumulatively, the reports diagnosed bilateral hip arthritis, lumbar radiculopathy, hypertension, and liver hemangioma, and each concluded that Collins was only temporarily unemployable. R. 336–42. These records do not undermine any conclusions reached by the ALJ such that we would find the ALJ's decision to be lacking in substantial evidence.